**Jaclyn RIPPEE, an individual, et al., Plaintiffs,**

v.

**BOSTON MARKET CORPORATION, et al., Defendants.**

**No. 05–CV–1359BTMJMA.**

United States District Court, S.D. California.

Oct. 14, 2005.

---

Raul Cadena, Esq. and L. Tracee Lorens, Esq., San Diego, CA; for Plaintiff's Counsel.

Mark D. Kemple, Esq., Irvine, CA, for Defense Counsel.

## ORDER DENYING PLAINTIFF'S REQUESTS FOR CLASS SURVEY AND LAST KNOWN ADDRESS AND TELEPHONE NUMBER OF MEMBERS OF THE PROPOSED CLASS IN CONNECTION WITH EXPEDITED DISCOVERY ON THE AMOUNT IN CONTROVERSY

ADLER, United States Magistrate Judge.

On July 5, 2005, Defendant Boston Market Corporation removed this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) ("CAFA"). On July 12, 2005, the Court issued an Order to Show Cause ("OSC") why the case should not be remanded for lack of jurisdiction. After conducting a hearing on the OSC, the Honorable Barry Ted Moskowitz ordered the parties to engage in limited expedited discovery over the course of ninety days on the issue of the amount in controversy, and to attend a discovery conference before Magistrate Judge Jan M. Adler.

This Court required the parties to meet and confer in advance of the discovery conference and submit a joint statement regarding the proposed scope of discovery pertaining to the amount in controversy. Rather than submitting a joint statement as ordered by the Court, the parties submitted separate statements to the Court on August 31, 2005. During the course of the Discovery Conference, held on September 7, 2005, this Court confirmed the scope of discovery which had previously been agreed upon by the parties, issued

rulings on those areas that had not been agreed upon by the parties, and set deadlines as appropriate. The Court's Orders filed on September 23, 2005 and September 29, 2005 set forth the pertinent agreements, decisions, and deadlines relating to jurisdictional discovery. *See* Doc. Nos. 26, 29. Plaintiff's requests for (a) a class survey and (b) the last known address and telephone number of each member of the proposed class were contested by Defendant and were taken under submission by the Court.

The parties do not dispute that Plaintiff shall, at some point, be permitted to send a survey to all members of the proposed class. Indeed, Judge Moskowitz made this abundantly clear during the August 11, 2005 hearing on the OSC. *See* Transcript of OSC at 31:19–21, 39:10–42:3.[1] The issue that the parties do not agree upon, and that is presently before the Court, is whether a class survey should be permitted forthwith, during the period of expedited jurisdictional discovery.

For the reasons set forth below, Plaintiff's request to send a survey to the members of the proposed class is *denied.* Additionally, because Plaintiff's only articulated reason for seeking the last known address and telephone number of each member of the proposed class relates to sending a class survey, this request is also *denied.*

## A. LEGAL STANDARDS

### 1. Amount in controversy

Generally, the amount in controversy is to be decided from the complaint itself. *Richmond v. Allstate Ins. Co.,* 897 F.Supp. 447, 449 (S.D.Cal.1995). *See also Pachinger v. MGM Grand Hotel–Las Ve-*

*gas, Inc.,* 802 F.2d 362, 363 (9th Cir.1986) ("The amount in controversy is normally determined from the face of the pleadings.") The calculation of the amount in controversy takes into account claims for "general" damages, "special" damages, punitive damages if recoverable as a matter of law, and attorneys' fees recoverable by statute or contract. *Id.* (citations omitted). The amount in controversy does not include accruing or accrued interest or the costs of the suit. *Id.* (citation omitted). According to the Report of the Senate Committee on the Judiciary on CAFA, the requirement under CAFA that the amount in controversy exceed $5,000,000 in the aggregate may be established "either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." S. Comm. on the Judiciary, Class Action Fairness Act of 2005, S.Rep. No. 109–14, at 42 (Feb. 28, 2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 40, 2005 WL 627977.

The procedure in the Ninth Circuit for determining the amount in controversy on removal requires a district court to first consider whether it is "facially apparent" from the complaint that the jurisdictional amount is in controversy. *See Singer v. State Farm Mut. Auto. Ins. Co.,* 116 F.3d 373, 377 (9th Cir.1997). If it is not, the court may consider facts in the removal petition as well as evidence submitted by the parties, including "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Id.* A defendant who bears the burden of proving the propriety of removal must provide facts supporting its assertions as to the minimum jurisdictional requirement. *See,*

1. Furthermore, during the Discovery Conference, Defendant's counsel, Mark Kemple, Esq., represented to Plaintiff's counsel and to the Court that while Defendant opposed the sending of a survey to the members of the proposed class in connection with jurisdictional discovery, it would not oppose the sending of a survey to the members of the proposed class at a later date in the case.

*e.g., Alexander v. FedEx Ground Package System, Inc.,* 2005 WL 701601, at *1 (N.D.Cal.2005), *citing Gaus v. Miles, Inc.,* 980 F.2d 564, 567 (9th Cir.1992).[2]

### 2. Jurisdictional discovery

 Jurisdictional discovery is permissible when the Court is unable to determine, on the existing record, whether it has jurisdiction. *See generally Wells Fargo & Co. v. Wells Fargo Exp. Co.,* 556 F.2d 406, 430 n. 24 (9th Cir.1977); *GTE New Media Servs., Inc. v. BellSouth Corp.,* 199 F.3d 1343, 1351–52 (D.C.Cir.2000). Such discovery should be "precisely focused" and "aimed at addressing matters relating to [ ] jurisdiction." *See GTE,* 199 F.3d at 1352; *see also Crane v. Carr,* 814 F.2d 758, 764 (D.C.Cir.1987) (finding that "reasonable discovery addressed to the jurisdictional issue" should be permitted). The Senate Committee on the Judiciary made clear that jurisdictional discovery under CAFA is to be limited in scope:

> The Committee understands that in assessing the various criteria established in all these new jurisdictional provisions, a federal court may have to engage in some fact-finding, not unlike what is necessitated by the existing jurisdictional statutes. The Committee further understands that in some instances, *limited* discovery may be necessary to make these determinations. However, the Committee cautions that these jurisdictional determinations should be made largely on the basis of *readily available information.* Allowing substantial, burdensome discovery on jurisdictional issues would be contrary to the intent of

these provisions to encourage the exercise of federal jurisdiction over class actions. For example, in assessing the citizenship of the various members of a proposed class, it would in most cases be improper for the named plaintiffs to request that the defendant produce a list of all class members (or detailed information that would allow the construction of such a list), in many instances a massive, burdensome undertaking that will not be necessary unless a proposed class is certified. Less burdensome means (e.g., factual stipulations) should be used in creating a record upon which the jurisdictional determinations can be made.

S.Rep. No. 109–14, at 44, 2005 U.S.C.C.A.N. at 42 (emphases added). Jurisdictional discovery in CAFA cases, as in pre-CAFA cases, therefore, should be "sufficiently tailored" to lead to information concerning the jurisdictional issue. *See, e.g., Schwartz v. Comcast Corp.,* 2005 WL 1799414, at *7 (E.D.Pa. July 28, 2005).

### B. DISCUSSION

 During the OSC hearing, Judge Moskowitz focused on Plaintiff's "big ticket" claims, *i.e.,* Plaintiff's overtime and "waiting time penalty" claims under the California Labor Code, for purposes of analyzing the amount in controversy. As Judge Moskowitz observed, the potential amount of "waiting time penalties" at stake can be calculated by multiplying the number of former employees in the proposed class by thirty days' wages; thirty days' wages can be calculated by multiply-

---

**2.** During the August 11, 2005 OSC hearing, Judge Moskowitz observed that notwithstanding the Report of the Senate Committee on the Judiciary on CAFA, which states that the burden of demonstrating that a case should be remanded to state court is on the plaintiff (*see* S.Rep. No. 109–14, at 41), the text of CAFA itself is silent with respect to the bur-

den. Judge Moskowitz further noted that case law decided prior to the enactment of CAFA places the burden of establishing federal jurisdiction on the removing party, and that, as of the time of the OSC, at least one court had decided that the burden remains on a removing defendant even under CAFA. Transcript of OSC at 4:3–5:20.

ing the average number of hours worked by the average rate of pay. *See* Cal. Labor Code § 203. These are calculations that can therefore be performed by using Defendant's own numbers. Transcript of OSC at 23:18–24:18. Although the results of a class survey could reveal the *bases* for the assessment of waiting time penalties, *e.g.*, by providing information concerning the number of missed meal and rest breaks alleged by the employees, this information is not necessary to ascertain the amount of waiting time penalties at stake.

Similarly, a significant component of Plaintiff's overtime claims can be ascertained using Defendant's own numbers. Under California Labor Code section 510, an employee is entitled to overtime at the rate of no less than one-and-one-half times his or her regular rate of pay if the employee works in excess of eight hours per day or forty hours per week. Cal. Labor Code § 510. Unpaid overtime is therefore only potentially an issue for those employees who work either a "full-time" schedule or close to such a schedule. Presumably, a "part-time" employee, *e.g.*, an employee who works only a few hours per shift, would not likely ever reach the eight hours per day or forty hours per week threshold for overtime pay. Determining, from Defendant's own records, the actual number of employees who worked an eight hour per day or forty hour per week schedule, or close to such a schedule, and who thus potentially would have been eligible for overtime, will help to test the assumptions upon which the overtime calculations previously set forth by Defendant rest, and could result in a revision of those numbers. *See* Def.'s Response to OSC, at 10–11.[3]

The amount of overtime claims in controversy can thus be calculated using a combination of Defendant's own numbers

and Plaintiff's allegations; information obtained via a class survey is not required for this determination. While it is correct, as Plaintiff contends, that determining the actual amount of overtime allegedly *owed* would require information directly from the employees, since Plaintiff alleges "off-the-clock" overtime that will not be documented in Defendant's records, an estimate of the amount of unpaid overtime in *controversy* can be calculated using information from Defendant's own records, as discussed above. As stated by Judge Moskowitz, "It's not a question as to what you would owe. It's a question as to what is in controversy." Transcript of OSC at 10:4–5. *See also Scherer v. Equitable Life Assurance Society of the United States*, 347 F.3d 394, 397–99 (2nd Cir.2003) (stating that the ultimate or provable amount of damages is not what is considered when determining the amount in controversy; rather, it is the amount put in controversy by the plaintiff's complaint).

Allowing a class survey during the period of expedited discovery, while the Court's jurisdiction remains unsettled, would be contrary to the principle of limited discovery as provided under existing case law and in the Senate Judiciary Committee Report on CAFA. Plaintiff has not set forth any persuasive argument or authority supporting the need for a class survey on the amount in controversy. Rather, Plaintiff's need for the survey is clearly more germane to the merits of the case rather than to the amount in controversy. Longstanding authority, however, requires that jurisdiction be established as a threshold matter before a federal court may consider a case on its merits. *See Steel Co. v. Citizens for a Better Environ-*

---

**3.** The overtime calculations set forth by Defendant in response to the OSC were premised upon the assumption that *all* of the members of the proposed class work, or worked, eight hours per day. *See* Def.'s Response to OSC, at 10–11.

*ment,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

The Court further observes that Judge Moskowitz was inclined to place the burden of demonstrating that the amount in controversy exceeds $5 million on Defendant. *See* Transcript of OSC at 4:3–5:20; *see also supra* fn. 1. The placing of this burden on Defendant supports not allowing Plaintiff to conduct a class survey now. If Defendant bears the burden, *Defendant,* not Plaintiff, must provide evidence that it is "more likely than not" that the amount in controversy exceeds the $5 million minimum. *See, e.g., Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 404 (9th Cir. 1996). The Court believes that the evidence to be produced in accordance with this Court's orders should provide more than an ample record upon which to determine the amount in controversy. Finally, permitting a class survey now would require the consideration of a host of disputed issues including, *inter alia,* attorney-client privilege issues, issues concerning whether Defendant is entitled to vet the survey prior to its issuance, and statistical analysis issues, which are clearly not contemplated by a limited and expedited discovery period.[4]

## C. CONCLUSION

Based on the foregoing reasons, Plaintiff's requests for a class survey and for the last known address and telephone number of all members of the proposed class, in connection with expedited discovery on the amount in controversy, is *denied.*

**IT IS SO ORDERED.**

4. These issues were raised in the parties' statements concerning the scope of discovery and during the Discovery Conference before Magistrate Judge Adler.