Vanessa **RASBERRY**

v.

**CAPITOL COUNTY MUTUAL FIRE INSURANCE COMPANY, et al.**

No. 1:08–CV–392.

United States District Court, E.D. Texas, Beaumont Division.

Feb. 19, 2009.

Michael R. Ramsey, Gregory F. Cox, The Mostyn Law Firm, Beaumont, TX, John Steven Mostyn, Mostyn Law Firm, Houston, TX, for Plaintiff.

Reagan Mark Brown, Melinda Rich Harper, Fulbright & Jaworski, Christopher Weldon Martin, Martin Disiere Jefferson & Wisdom, Houston, TX, Jonathan Allen, Morris C. Carrington, Mehaffy & Weber, Beaumont, TX, for Defendants.

### ORDER ADOPTING UNITED STATES MAGISTRATE JUDGE'S REPORT

RON CLARK, District Judge.

The court referred this matter to the Honorable Earl S. Hines, United States Magistrate Judge, for pretrial proceedings pursuant to an order of reference entered on August 4, 2008. The court has received and considered the report of the United States magistrate judge, who recommends that the court grant plaintiff's motion to remand.

Defendant objects to the magistrate judge's findings, conclusions, and analysis. This requires a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. 28 U.S.C.

§ 636(b)(1)(C). After conducting such review, the court concludes that the magistrate judge's findings, conclusions and analysis are correct.

Accordingly, defendant's objections are **OVERRULED,** and the magistrate judge's report is hereby **ADOPTED.** It is further

**ORDERED** that "Plaintiff's Motion to Remand" (Docket No. 12) is **GRANTED.** An order remanding this action to the 58th Judicial District Court of Jefferson County, Texas will be entered separately.

The purpose of the referral having been served, it is further **ORDERED** that the reference to the magistrate judge is **VACATED.**

Report and Recommendation
Re Motion to Remand

EARL S. HINES, United States
Magistrate Judge.

This report concerns the plaintiff's motion to remand this action to the 58th Judicial District Court of Jefferson County, Texas. To resolve this motion, the court must address several contested issues including two which appear to be matters of first impression under the Class Action Fairness Act. *See* discussion *infra* Section V. These novel issues are (1) whether the "minimal diversity" element of federal class action jurisdiction may be established by citizenship of a defendant against whom no class relief is sought; and, if so, (2) whether the "home state"

exception to federal class action jurisdiction contemplates that a party against whom no class relief is sought may be a "primary defendant."

### I. Magistrate Judge Authority

This case is assigned to the Hon. Ron Clark, United States district judge, and is referred to the undersigned United States magistrate judge for pretrial proceedings. Pursuant to the order of reference entered on August 4, 2008, the magistrate judge is authorized to hear and determine all pretrial matters before the court except certain case-dispositive motions listed in 28 U.S.C. § 636(b)(1)(A). As to those, the magistrate judge is designated to conduct hearings and submit proposed findings of fact and recommendations for disposition thereof. 28 U.S.C. § 636(b)(1)(B).

A threshold question is whether motions to remand are ones that magistrate judges may hear and determine absent the parties' consent, or whether they are case-dispositive matters that require reports with recommendations for appropriate disposition. There is no definitive circuit rule, and other courts differ in their resolution of this issue.[1] For that reason, the undersigned elects in this instance to submit a report with a recommendation. This procedure preserves the prerogative of the district judge, and any potentially aggrieved party may secure *de novo* review by the presiding district judge prior to final action by filing a timely objection.

1. *Compare Saxon v. Thomas,* No. 06–2339, 2007 WL 1974914, at *2 (W.D.La. June 29, 2007), *Robinson v. Cheetah Transp.,* No. Civ. A. 06–0005, 2006 WL 1453036, at *1 (W.D.La. May 17, 2006), *Vaquillas Ranch Co. v. Texaco Exploration & Production, Inc.,* 844 F.Supp. 1156, 1160–63 (S.D.Tex.1994), and *City of Jackson v. Lakeland Lounge of Jackson, Inc.,* 147 F.R.D. 122, 124 (S.D.Miss.1993) (holding that motions to remand are not dispositive and, consequently, may be referred to a United States magistrate judge for determination),

*with Williams v. Beemiller, Inc.,* 527 F.3d 259, 266 (2nd Cir.2008), *Vogel v. U.S. Office Products Co.,* 258 F.3d 509, 517 (6th Cir.2001); *First Union Mortgage Corp. v. Smith,* 229 F.3d 992, 996 (10th Cir.2000), and *In re U.S. Healthcare,* 159 F.3d 142, 146 (3d Cir.1998) (holding that inasmuch as remand orders banish litigants from federal court, they are equivalent to final decisions or dispositive actions that must ultimately be performed by a district judge).

## II.   Parties

Plaintiff is Vanessa Rasberry ("Rasberry"), a resident of Jefferson County, Texas, and a citizen of Texas.

Defendants are Capitol County Mutual Fire Insurance Company ("Capitol County"), ICA, Inc. ("ICA"), Todd Dwayne Bilbrey and Brenda Louise Denby.  Capitol County is a Texas corporation with its principal place of business in Texas.  ICA is a North Carolina corporation with its principal place of business in North Carolina.  Bilbrey and Denby are individuals residing in and citizens of the state of Texas.

## III.   Background; Nature of Suit

Initially, this action appears to be a suit on a Texas Homeowners' Insurance Policy just like hundreds of other actions that were brought against insurers and adjusters after Hurricane Rita caused widespread devastation in southeast Texas in September, 2005.  However, uncharacteristic of those actions, Rasberry asserts an additional claim in behalf and as a representative of a proposed class of persons.

### A.   Typical Claims

Rasberry alleges that she is the owner of a Texas Homeowners' Insurance Policy issued by Capitol County insuring her home from windstorm and hurricane damage.  Rasberry further alleges that (a) her property was damaged during Hurricane Rita;  (b) she submitted to Capitol County a timely claim under her policy for repairs and additional living expenses; (c) Capitol County refused to pay all amounts due under the policy;  and (d) Capitol County engaged in multiple improper actions that breached the insurance contract, breached Capitol County's common law duty of good faith and fair dealing and violated the Texas Insurance Code.

Rasberry further alleges that Capitol County retained ICA to adjust her policy claim, and that ICA assigned Bilbrey and Denby to inspect her property and estimate damages and amounts necessary for repairs.  Rasberry alleges that these adjuster defendants also committed wrongful acts that violated the Texas Insurance Code in numerous respects, and engaged in common law fraud.

In connection with the above causes of action against all four defendants, Rasberry seeks to recover additional amounts allegedly due and owing under the insurance policy, treble damages, statutory penalties, attorney fees, interest and costs under Texas law.

### B.   Class Action Claim

In addition to her individual claims described above, Rasberry proffers class action allegations against one defendant only, Capitol County.  Rasberry alleges that Capitol County systematically and pervasively improperly handled policy holders' claims for damages caused by Hurricane Rita to residential properties in Texas in one or more of the following material respects:

- failing to timely acknowledge receipt of the claim;
- failing to timely commence an investigation of the claim;
- misrepresenting material policy provisions;
- failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim;
- failing to provide a reasonable explanation to the insureds of the basis for the claims handling decision;
- failing to affirm or deny coverage within a reasonable time;  or
- assigning a person not licensed as an adjuster in the state of Texas to adjust claims.

Rasberry seeks to represent and obtain relief for all policy owners whose claims

were improperly handled in any of the ways described above, were adjusted by persons not licensed to adjust claims in the state of Texas, and who are not represented by counsel or resolving their claims through separate litigation. In behalf of that class, Rasberry seeks declaratory and injunctive relief suspending the statute of limitations and preventing Capitol County from asserting limitations as an affirmative defense until each class member's policy claim is evaluated by a licensed adjuster.[2]

### IV. Proceedings

Rasberry filed this action on March 26, 2008, in the 58th Judicial District Court of Jefferson County, Texas. Capitol County subsequently removed it to this federal court, invoking federal jurisdiction under the Class Action Fairness Act of 2005.

On August 15, 2008, Rasberry moved to remand, arguing that federal jurisdiction is lacking, or, alternatively, that relevant circumstances require the court to decline jurisdiction under 28 U.S.C. § 1332(d)(4).

### V. Class Action Fairness Act of 2005

The Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332, 1453, 1711–15 (2005) (hereafter "CAFA")[3] was enacted to curtail "forum shopping" and prevent "inconsistent and inadequate judicial involvement" in interstate class actions. S.

Comm. on the Judiciary, Class Action Fairness Act of 2005, S.Rep. No. 109–14 (Feb. 28, 2005), reprinted in 2005 U.S.C.C.A.N. 3, 40, 2005 WL 627977. To further this legislative objective, the statute greatly expands and liberalizes diversity jurisdiction of federal courts with respect to class actions.[4] It also relaxes the standard for removal by eliminating both requirements of unanimous consent among defendants and the one-year deadline.[5] Finally, it authorizes federal courts of appeal to accept appeals from interlocutory district court orders granting or denying motions to remand, irrespective of whether the court based its decision on jurisdictional, statutory or non-statutory grounds.[6]

As a counterpoise to this oceanic enlargement of federal judicial jurisdiction, CAFA delineated exceptions designed to insure that truly local controversies will be adjudicated in state courts. 28 U.S.C. § 1332(d)(4). Thus, a federal district court *must* decline to exercise its expanded CAFA jurisdiction under two provisions: (1) the *local controversy* exception, § 1332(d)(4)(A); and (2) the *home state* exception, § 1332(d)(4)(B). *See* discussion *infra* Section VII. In addition, a district *may*, "in the interests of justice and looking at the totality of the circumstances"

---

**2.** Rasberry requests the court to declare that: 1) the Texas statute of limitations does not begin to run on policy and statutory claims until such time as Capitol County has a licensed insurance adjuster estimate the damage; 2) the use of unlicensed adjusters is a breach of contract prohibiting Capitol County from raising a statute of limitations defense; 3) the statute of limitations is tolled until such time as Capitol County has a licensed insurance adjuster estimate the damage; and 4) Capitol County is equitably estopped from asserting a statute of limitations defense. Rasberry also requests an order from the court requiring Capitol County to assign licensed adjusters to re-evaluate the claims of all class members whose claims were adjusted by unlicensed persons, and to provide notice to all

class members that their claims were improperly adjusted, informing them of their right to seek another evaluation.

**3.** Pub.L. No. 109–2, §§ 1332, 1453, 1711–15, 119 Stat. 4 (2005).

**4.** Pub.L. No. 109–2 (Feb. 18, 2005); *see also In re Katrina Canal Litig. Breaches*, 524 F.3d 700, 711 n. 47 (5th Cir.2008); *Preston v. Tenet Healthsys. Mem'l Med. Ctr., Inc. (Preston II)*, 485 F.3d 804, 810 (5th Cir.2007).

**5.** Pub.L. No. 109–2; *see also In re Katrina Canal Litig. Breaches*, 524 F.3d at 711 n. 47; *Preston II*, 485 F.3d at 810.

**6.** 28 U.S.C. § 1453(c)(1).

decline to exercise jurisdiction when certain demographic circumstances exist and after considering several enumerated statutory factors.[7]

## VI. CAFA Jurisdiction

■ CAFA confers original federal jurisdiction over class actions when: (1) any member of the plaintiff class is a citizen of a different state than any defendant ("minimal diversity"); (2) the amount in controversy exceeds $5,000,000, exclusive of interests and costs; and (3) the class includes at least one hundred class members. 28 U.S.C. § 1332(d)(2),(5)(B). However, "CAFA does not change the traditional rule that the party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction." *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 n. 3 (11th Cir.2006); *see also Werner v. KPMG LLP*, 415 F.Supp.2d 688, 695 (S.D.Tex.2006).

■ The court " 'has wide, but not unfettered, discretion to determine what evidence to use in making its determination of jurisdiction.' " *Joseph v. Unitrin,* No. 1:08–CV–077, 2008 WL 3822938, at *5 (E.D.Tex. Aug. 12, 2008) (*quoting Coury v. Prot,* 85 F.3d 244, 249 (5th Cir.1996)). The court may rely on factual allegations contained in the complaint, or request additional evidence from the parties. *Id.;* see, *e.g., Preston v. Tenet Healthsys. Mem'l Med. Ctr., Inc. (Preston I),* 463 F.Supp.2d 583, 592–93 (E.D.La.2006) (district court requested additional evidence regarding the citizenship of putative class members). Indeed, "Congress contemplated that 'a federal court may have to engage in some fact-finding, not unlike what is necessitated by the existing jurisdictional statutes.' " *Joseph,* 2008 WL 3822938, at *5 (*quoting* S.Rep. No. 109–14, at 44, 2005

U.S.C.C.A.N. at 42); *see also Hirschbach v. NVE Bank,* 496 F.Supp.2d 451, 460 (D.N.J.2007).

To assist the court and narrow the issues, the parties agreed and stipulated to a number of relevant facts. *See Stipulations,* Docket Nos. 25 and 26. In addition, Capitol County provided other pertinent information by affidavits submitted in connection with its removal notice and response to plaintiff's motion to remand. Collectively, this information establishes that (a) Capitol County received 6,795 separate policy claims for damage caused by Hurricane Rita to Texas properties; (b) claims on 152 of those policies were or are currently being resolved through litigation or counsel retained by policy holders; (c) the total policy limits on the remaining 6,643 claims equals $202,632,000; and (d) the remaining policy limits after deducting payments already made on those claims is $166,324,177.

### A. Amount In Controversy

Rasberry disputes that the amount in controversy exceeds $5,000,000.00. Rasberry's argument is premised on the fact that her class action petition does not seek any monetary recovery, and that Capitol County, in any event, has failed to prove the amount in controversy.

CAFA provides explicit guidance for determining amount in controversy. First, claims of individual class members are *aggregated* to determine whether the amount in controversy exceeds the sum or value of $5,000,000 (exclusive of interest and costs). 28 U.S.C. § 1332(d)(6). The amount in controversy may be established "either from the viewpoint of the plaintiff or the viewpoint of the defendant, *and regardless of the type of relief sought (e.g., damages,*

---

7. *See* 28 U.S.C. § 1332(d)(3); *see also Martin v. Lafon Nursing Facility of the Holy Family, Inc.,* 548 F.Supp.2d 268, 278 (E.D.La.2008).

This "discretionary exception" is not addressed here, as it is not relied on by plaintiff as a basis for remand.

*injunctive relief, or declaratory relief)."* *Rippee v. Boston Market Corp.,* 408 F.Supp.2d 982, 984 (S.D.Cal.2005) (*quoting* S.Rep. No. 109–14, at 42, 2005 U.S.C.C.A.N. at 40 (emphasis added)). Further, when assessing the jurisdictional amount in declaratory relief cases, federal courts should consider "the value of all relief and benefits that would logically flow from the granting of the declaratory relief sought by the claimants." S.Rep. No. 109–14, at 43, 2005 U.S.C.C.A.N. at 41. Finally, the Report of the Senate Committee on the Judiciary expresses legislative intent that this subsection be interpreted expansively, and its provisions read broadly, with a strong preference for federal jurisdiction. S.Rep. No. 109–14, at 42–43.

■ General jurisprudence also is instructive. In *ordinary* actions for declaratory relief, "the amount in controversy is measured by the *value of the object of the litigation.*"[8] Thus, it is measured by the "value of the right to be protected or the extent of the injury to be prevented."[9] In declaratory judgment actions involving *insurance,* policy limits control when the *validity* of the insurance contract is in question.[10] However, in declaratory judgment actions involving the *applicability* of an insurance policy to a particular occurrence, amount in controversy is measured by the value of the underlying claim rather than the face amount of the policy.[11]

■ Rasberry's class allegations seek only declaratory and injunctive relief. The nature of the relief sought—suspending the applicable statute of limitations—implicates class members' ability to enforce their contracts even after the statute of limitations would otherwise bar their claims. As such, Capitol County's *obligation to pay* is at issue, and the amount in controversy must be measured by the value of the underlying claim rather than the face amount of the policies at issue.

■ If Rasberry's proposed class action succeeds, one realistic measure of the value of all relief and benefits that could logically flow from the granting of the declaratory relief sought by the claimants is the remaining limits on 6,643 policies ($166,324,177) considering that Rasberry alleges that Capitol County systematically mishandled all Hurricane Rita claims. Thus, given the object of the litigation, the foreseeable amount in controversy from the viewpoint of Capitol County exceeds the statutory minimum. While every class member's claim may not equal policy limits, the jurisdictional amount in controversy is satisfied if, on average, the value of all potential class members' underlying contract claims amounts to only *three per-*

---

8. *Total Envtl. Solutions, Inc. v. St. Paul Fire & Marine Ins. Co.,* No. Civ.A. 02–3309, 2003 WL 715755, at *2 (E.D.La. Feb. 26, 2003) (emphasis added); *Allstate Ins. Co. v. Hilbun,* 692 F.Supp. 698, 700 (S.D.Miss.1988); *Leininger v. Leininger,* 705 F.2d 727, 729 (5th Cir.1983).

9. *Total Envtl. Solutions, Inc.,* 2003 WL 715755, at *2 (*quoting St. Paul Reinsurance Co. v. Greenberg,* 134 F.3d 1250, 1252–53 (5th Cir.1998); *Hartford Ins. Group v. Lou–Con, Inc.,* 293 F.3d 908, 910 (5th Cir.2002)).

10. *See Hawkins v. Aid Ass'n for Lutherans,* 338 F.3d 801, 805 (7th Cir.2003) (when the validity of insurance policy is in dispute, as opposed to an insurer's obligation to pay, the

face value of the policy is the appropriate measurement in determining amount in controversy); *Hartford Ins. Group,* 293 F.3d at 910; *see also Waller v. Prof'l Ins. Corp.,* 296 F.2d 545, 547–48 (5th Cir.1961) (when the validity of a contract or a right to property is called into question in its entirety, the value of the property controls the amount in controversy).

11. *See Hartford Ins. Group,* 293 F.3d at 910; *Coregis Ins. Co. v. Schuster,* 127 F.Supp.2d 683, 686 (E.D.Pa.2001) (in declaratory action on insurance contract, amount in controversy is determined by value of underlying legal claims for which insurance coverage is sought, and is not restricted by policy limits).

*cent* of the remaining policy limits. But in addition to *contractual* damages, Capitol County also would be exposed to *extra-contractual* claims: treble damages, statutory penalties, and attorneys' fees under the Texas Insurance Code. Accordingly, Capitol County easily meets its burden to establish that the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

## B. Number of Proposed Class Members

Rasberry does not dispute that the class she proposes to represent is made up of at least 100 members. Given that there exist more than 6,000 claims relating to damage caused by Hurricane Rita, and that the parties do not dispute the number of putative class members, simple logic dictates the conclusion that at least 100 different persons filed such claims with Capitol County, thereby satisfying this element of jurisdiction.

## C. Minimal Diversity

Rasberry also does not challenge the "minimal diversity" element of federal CAFA jurisdiction. However, the court has an independent duty to inquire as to its jurisdiction,[12] and, for reasons discussed in this section, the undersigned concludes that Capitol County has not established minimal diversity.

■ Diversity of citizenship exists between Rasberry, a citizen of Texas, and at least one defendant, ICA, a citizen of North Carolina. If ICA were a *class* defendant, CAFA's minimal diversity requirement clearly would be present. However, only Capitol County is sued by Rasberry in behalf of the proposed class, and Capitol County, like Rasberry, is a citizen of Texas.

■ Under this scenario, is ICA's citizenship relevant? Stated another way, if P sues A, B and C, asserting one cause of action against all three defendants, and in the same suit asserts a second cause of action seeking class relief only against defendant A, does the citizenship of defendants B and C have any bearing on the issue of whether minimal diversity exists in the class action?

Congress apparently did not contemplate that a plaintiff might bring an individual action against several defendants, at least one of whom was diverse, while asserting, in the same action, class allegations against a single, non-diverse defendant. Whether minimal diversity of citizenship between the parties in the individual action will suffice to confer federal jurisdiction in a class action brought against a single, non-diverse defendant also appears to be a novel question not yet addressed by courts.[13]

---

12. Courts have a continuing duty to examine their own jurisdiction, and are required to raise lack of subject-matter jurisdiction when the issue appears. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) (*citing Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884)); *H & D Tire & Automotive–Hardware, Inc. v. Pitney Bowes Inc.*, 227 F.3d 326, 328 (5th Cir.2000).

13. Courts have addressed situations in which the "dual citizenship" of a corporation determines whether minimal diversity exists. *Compare Johnson v. Advance Am.*, 549 F.3d 932, 936–37 (4th Cir.2008) (holding that court lacked diversity jurisdiction where all plaintiffs were citizens of South Carolina, and defendant was citizen of both Delaware and South Carolina); and *Smalls v. Advance Am.*, No. 2:07–3240, 2008 WL 4177297, at *6 (D.S.C. Sep. 5, 2008) (minimal diversity not met where plaintiff's were citizens of South Carolina and defendant corporation was citizen of both Delaware and South Carolina), *with Fuller v. Home Depot Svcs., LLC*, No. 1:07–CV–1268, 2007 WL 2345257, at *3 (N.D.Ga. Aug. 14, 2007) (finding minimal diversity where defendant was citizen of both Delaware and Georgia, and all plaintiffs were citizens of Georgia).

Generally, it seems appropriate to disregard the diverse citizenship of any party not named in the proposed class action. When, as here, the only parties to the class action are citizens of the same state, there is no apparent interstate nexus. The potential for forum shopping or inconsistent and inadequate judicial involvement in "interstate class actions"—the problem that Congress sought to address—is absent. Thus, an interpretation that citizenship of parties not named in the class action portion of a suit *always* counts with respect to the minimal diversity element of federal CAFA class action jurisdiction is too broad.

On the other hand, an across-the-board, inflexible rule that citizenship of parties not formally named in the class action can *never* be considered could lead to abuse and manipulation designed to frustrate the will of Congress. Given Congress's intent that CAFA be interpreted broadly with a strong preference for federal jurisdiction, a case-by-case determination based on the totality of the circumstances appears to be a more prudent and cautious approach. A traditional assessment somewhat akin to a reverse improper joinder analysis would be fair, balanced and consistent with legislative intent.

Thus, when success in the class action inevitably or likely will adversely affect a diverse party deliberately not named as a class-action defendant, the court properly should consider that party's citizenship when determining CAFA's minimal diversity element. Conversely, when class action success will adversely affect only a single, non-diverse class defendant actually named, citizenship of other parties not named as class defendants should be disregarded.

Here, class action success will adversely affect only Capitol County. The court is asked to declare the statute of limitations tolled only with respect to Capitol County.

Only Capitol County may be enjoined from asserting limitations as a defense in future suits by policy holders to recover costs of repairing damage occasioned by Hurricane Rita, additional living expenses and extra-contractual damages. Therefore, ICA's diverse citizenship should be disregarded.

There is no evidence of minimal diversity before the court other than ICA's citizenship. Consequently, Capitol County has not carried its burden of showing minimal diversity sufficient for this court to entertain this action under CAFA.

VII. CAFA's Mandatory Exceptions

Rasberry argues alternatively that even if original CAFA federal jurisdiction exists here, the district court must decline to exercise its jurisdiction under the "local controversy" and "home state" exceptions. These exceptions were enacted to ensure that state courts continue to adjudicate truly local controversies. S. Rep. 109–14, at 28. When the relevant facts establish the conditions that trigger these exceptions, the court must decline to exercise its expanded CAFA jurisdiction. 28 U.S.C. § 1332(d)(4).

■ The party objecting to the exercise of CAFA jurisdiction "bears the burden of proving by a preponderance of the evidence the applicability of any claimed jurisdictional exceptions." *Joseph v. Unitrin, Inc.*, No. 1:08–CV–077, 2008 WL 3822938, at *4 (E.D.Tex. Aug. 12, 2008). The parties' factual stipulations mentioned earlier establish certain relevant facts: (a) greater than two-thirds of the members of the proposed class are citizens of the State in which this action was originally filed; (b) Capitol County is a defendant from whom significant relief is sought by members of the proposed class, whose alleged conduct forms a significant basis for the claims asserted by the proposed class, and whose citizenship is in Texas; and (c) principal injuries resulting from the alleged or

related conduct of Capitol County were incurred in Texas. Further, the parties stipulate that no other class action against Capitol County has been filed within three years prior to the filing of this action except *Randy Williams and Samuel Haley v. Capitol County Mutual Fire Insurance Company and Reliable Life Insurance Company* (hereafter *"Williams"*).[14]

### A. *"Local Controversy" Exception (28 U.S.C. § 1332(d)(4)(A))*

The local controversy exception "identifies controversies that 'uniquely affect[ ] a particular locality to the exclusion of all others.'" *Kaufman v. Allstate Ins. Co.*, 2008 WL 4224911, No. 07–6160, at *1 (D.N.J. Sep. 10, 2008) (*quoting Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir.2006)). Under it, a district court "shall decline to exercise jurisdiction":

> (A) (I) over a class action in which—
>
> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>
> (II) at least 1 defendant is a defendant—
>
> (aa) from whom significant relief is sought by members of the plaintiff class;
>
> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
>
> (cc) who is a citizen of the State in which the action was originally filed; and
>
> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were

> incurred in the State in which the action was originally filed; and
>
> (ii) during the 3–year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

28 U.S.C. § 1332(d)(4)(A).

■ The parties' factual stipulations recited above unequivocally establish all facts necessary to trigger this exception except whether *Williams* constitutes a class action asserting the same or similar factual allegations. This single issue, therefore, is determinative. The "local controversy" exception clearly may not be employed when a class action asserting the same or similar factual allegations against any defendant has been filed within the three-year period immediately preceding the filing of the subject class action. 28 U.S.C. § 1332(d)(4)(A)(ii); *see also Brook v. UnitedHealth Group Inc.*, No. 06 CV 12954, 2007 WL 2827808, at *4 (S.D.N.Y. Sep. 27, 2007).

Legislative history suggests than when "a controversy results in the filing of multiple class actions, it is a strong signal that those cases may not be of the variety that this exception is intended to address." S. Rep. 109–14, at 40–41, 2005 U.S.C.C.A.N. at 39. Moreover, "the inquiry under this criterion should not be whether identical (or nearly identical) class actions have been filed," but rather, "whether similar *factual allegations* have been made against the defendant in multiple class actions, regardless of whether the same causes of actions were asserted or whether the purported plaintiff classes were the same (or even overlapped in significant respects)."

---

**14.** The *Williams* class action was filed on November 1, 2007 (within three years of the filing of this action), in the 60th Judicial District Court of Jefferson County, Texas, under the clerk's docket number B180693. It was subsequently removed to this court, as cause number 1:07–CV–975.

*Id.* at 41, 2005 U.S.C.C.A.N. at 39 (emphasis added).

Like Rasberry, the plaintiffs in *Williams* asserted causes of action against Capitol County for breach of contract, breach of the duty of good faith and fair dealing and for violations of the Texas Insurance Code with respect to policy claims seeking reimbursement for damages caused by Hurricane Rita. Moreover, one can generically describe each action as complaining of Capitol County's "mishandling" of policy claims. The gravamen of *Williams's* allegations, however, was that Capitol County (and its co-defendant The Reliable Life Insurance Company) wrongfully refused to include contractor's overhead and profit in determining the actual cash value of their claims when necessary repairs would require the services of three or more skilled trades. The relief sought in behalf of the class was money damages, i.e., an additional sum of 20% for contractor overhead and profit, statutory penalties, interest and attorney's fees.

Rasberry does not complain of failure to include contractor overhead and profit when adjusting losses. Rather, the gravamen of Rasberry's allegation is that Capitol County wrongfully utilized unlicensed individuals to adjust policy holder claims, and otherwise delayed and mishandled claims to such an egregious extent that the court should suspend the statute of limitations in future actions against Capitol County until such time as Capitol County has a licensed adjuster evaluate each class member's claim. The relief sought in behalf of the proposed class is declaratory and injunctive.

The legislative history cited above makes clear that the "local controversy" exception is not overcome merely because purported classes overlap in significant respects. Nor is the exception mooted when the purported class actions are identical in other incidental respects, such as arising out of the same event and including a common defendant. Rather, the determinative factor is whether *similar factual allegations* have been made against the same defendant in multiple actions.

Drawing the line between factual allegations that are similar and those that are dissimilar is inherently imprecise. Such undertaking requires sound judicial discretion. Clearly, Congress did not intend for courts to seize upon minor or insignificant variances in order to decline to exercise expanded class action jurisdiction. Thus, courts should not employ this exception when the essential contours of claims and factual averments in multiple class actions are substantially the same or overlapping notwithstanding some identifiable differences.

Here, however, the essential contours of this action and *Williams* are wholly dissimilar. *Williams* complained of Capitol County's failure to pay *contractor overhead and profit*. Rasberry complains of Capitol County's use of *unlicensed adjusters*. *Williams* sought to recover *money damages*. Rasberry seeks only *declaratory and injunctive* relief. The principal objects of both suits are factually and analytically distinct even though both suits arise from a common event, Hurricane Rita, and share a common defendant, Capitol County. Most importantly, the factual basis giving rise to both actions differs dramatically. The proof necessary to prevail in behalf of the class in *Williams* differs in all crucial respects from the proof necessary to prevail in behalf of the proposed class in this action.

These fundamental differences between *Williams* and the instant action compel a conclusion that during the 3–year period preceding the filing of this class action, no other class action has been filed asserting the same or similar factual allegations against Capitol County on behalf of the

same or other persons. Therefore, the court is required to decline to exercise its CAFA jurisdiction, assuming *arguendo* that such jurisdiction exists.

B.  *"Home State" Exception (28 U.S.C. § 1332(d)(4)(B))*

Similar to the local controversy exception, the home state exception is intended to identify controversies "that have a truly local focus." S. Rep. 109–14, at 28, 2005 U.S.C.C.A.N. at 28. Pursuant to this exception, a district court "shall" decline to exercise its jurisdiction over class actions in which "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the *primary defendants* are citizens of the State in which the action was originally filed." 28 U.S.C.A. § 1332(d)(4)(B) (emphasis added). Under this exception, *all* primary defendants must be citizens of the state in which the action was originally filed (Texas). 28 U.S.C. § 1332(d)(4)(B); *see Robinson v. Cheetah Transp.*, No. 06–0005, 2006 WL 3322580, at *2 n. 7 (W.D.La. Nov.14, 2006) (emphasis added).

██  As noted earlier, the parties stipulate that two-thirds or more of the members of the proposed class are citizens of Texas; and that Capitol County is a Texas citizen and a primary defendant. The parties disagree, however, on whether the diverse citizen, ICA, is a primary defendant. Rasberry argues that ICA is not a primary defendant for class action purposes since she asserts class claims only against Capitol County. In opposition, Capitol County argues that ICA is a primary defendant because class members might continue to bring suit against ICA for alleged improper adjusting of their claims without regard to the possible application of the statute of limitations if the proposed class relief is granted.

"The term "primary defendants" is not defined in CAFA. Some courts conclude that the term 'primary defendant' includes any defendant against whom direct liability is sought, and therefore excludes a defendant whose liability is based on vicarious liability, indemnification, or contribution." *Bennett v. Board of Com'rs for East Jefferson Levee Dist.*, Nos. 07–3130, 07–3131, 2007 WL 2571942, at *6 (E.D.La. Aug. 31, 2007) (*quoting Robinson v. Cheetah Transp.*, No. 06–0005, 2006 WL 468820, at *2 n. 7 (W.D.La. Nov. 14, 2006)). A defendant's exposure to liability is also relevant to whether a defendant may be characterized as "primary." *Bennett*, 2007 WL 2571942, at *6 (comparing the maximum exposure of liability for each defendant when determining primacy). Another court deemed a primary defendant as one who "has substantial exposure to significant portions of the proposed class in the action, particularly any defendant that is allegedly liable to the vast majority of the members of the proposed classes (as opposed to simply a few individual class members)." *Robinson*, 2006 WL 468820, at *2 n. 7; S. Rep. 109–14, at 43–45, 2005 U.S.C.C.A.N. at 41.

Here, ICA should not be deemed a primary defendant. No class allegation whatsoever has been lodged against ICA. The only liability ICA may incur is in Rasberry's *individual* action against all four defendants, not her *class* claim against only Capitol County. *See* discussion *supra* Section VI., C., pp. 11–13. Only Capitol County, not ICA, "has substantial exposure to significant portions of the proposed class in the action." *See Robinson*, 2006 WL 468820, at *2 n. 7.

Simply put, it is Capitol County, and Capitol County alone, that is the "real target" of this class action lawsuit. *See* S. Rep. 109–14, at 43–45. Rasberry's class action, if successful, will not estop or otherwise preclude ICA from arguing that the applicable statute of limitations bars any

future suit against it by a Capitol County policy holder. For these reasons, the court is again required to decline to exercise its CAFA jurisdiction, assuming such jurisdiction is present.

### VIII. Recommendations

The court should grant "Plaintiff's Motion to Remand" (Docket No. 12) for lack of subject-matter jurisdiction because Capitol County fails to establish minimal diversity of citizenship between it and any member of the proposed plaintiff class as required by 28 U.S.C. § 1332(d)(2)(c). Alternatively, the court should decline to exercise its jurisdiction under the mandatory "local controversy" and "home state" exceptions codified in 28 U.S.C. § 1332(d)(4)(A) and (B), and remand the action to the state court where it originally was filed.

### IX. Objections

Objections must be: (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 1(a), 6(b), and 72(b).

A party's failure to object bars that party from: (1) entitlement to de novo review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir.1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, *Douglass v. United Servs. Auto. Ass'n.*, 79 F.3d 1415, 1417 (5th Cir.1996) (en banc).

SIGNED this 13th day of January, 2009.