# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2458

_____

James Bell,                                    *
                                               *
             Plaintiff-Appellee,               *
                                               *   Appeal from the United States
       v.                                      *   District Court for the
                                               *   Southern District of Iowa.
The Hershey Company; Mars, Inc.;               *
Masterfoods USA; Nestle USA;                   *
Cadbury Adams USA, LLC,                         *
                                               *
             Defendants-Appellants.            *

_____

Submitted: January 15, 2009
Filed: February 26, 2009

_____

Before MURPHY and SMITH, Circuit Judges, and LIMBAUGH,[1] District Judge.

_____

MURPHY, Circuit Judge.

James Bell brought a purported class action in an Iowa court against five chocolate manufacturers for alleged violations of state antitrust laws. The manufacturers filed a notice of removal to the federal district court under the Class Action Fairness Act of 2005 (CAFA), and Bell moved to remand to state court. After concluding that the amount in controversy was below the federal jurisdictional

_____

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri, sitting by designation.

minimum, the district court remanded the case for lack of subject matter jurisdiction. The manufacturers appeal, asserting that the district court erred by requiring them to prove to a legal certainty that Bell's claim exceeds the jurisdictional threshold. We vacate and remand.

Bell filed this class action against The Hershey Company, Mars, Inc., Masterfoods USA, Nestle USA, Inc., and Cadbury Adams USA, LLC on February 28, 2008. The suit alleged that the manufacturers violated the Iowa Competition Law, Iowa Code Ann. §§ 553.4 and 553.5 (West 1997), by conspiring to "(a) fix, raise, maintain, and stabilize the price of chocolate; and (b) caused Named Plaintiff and other members of the Class to pay higher and supra competitive prices for chocolate."

The district court observed that Bell's petition was "clearly designed" to evade federal jurisdiction.[2] The petition alleged in relevant part: "[T]he Class Action Fairness Act does not apply and no federal court jurisdiction is available as a basis for removal." Although Bell conceded within the petition that two of the three requirements to support jurisdiction under CAFA were satisfied (minimal diversity and 100 or more class members), he contended that the amount in controversy was $4.99 million, just short of the $5 million jurisdictional threshold. See Class Action Pet. ¶ 14(d) ("[P]laintiffs limit compensatory damages to $3.75 million. Attorney's fees sought by plaintiffs in this lawsuit are limited to no more than $1.24 million. Combined, the plaintiff class seeks less than $5 million in compensatory damages."). Bell included these figures despite an Iowa prohibition on pleading damages with specificity. See Iowa R. Civ. P. § 1.403(1) ("[A] pleading shall not state the specific amount of money damages sought . . . . The specific amount and elements of monetary damages sought may be obtained through discovery.").

---

[2]The initial pleading is referred to as a petition rather than a complaint in Iowa, see Iowa R. Civ. P. § 1.401, and we use the terms interchangeably.

Bell arrived at a figure below the jurisdictional minimum through permissible control of the class composition, the assumed price fixing overcharge, and the duration of the class period. Although he alleged violations of Iowa law that presumably applied to all indirect purchasers of chocolate in the state, he limited the putative class to those who purchased chocolate in eight specified counties, collectively representing "less than 8.33% of the average population of Iowa." Bell also based his compensatory damages claim on an assumed "5% price-fixing overcharge" although higher figures are contained elsewhere in the petition.[3] Bell's compensatory damages calculation is only based on a "six-year Class Period from 2002 through 2007" even though the petition otherwise pleads a class period that extends at least through February 2008.[4]

Defendants believed that revising the assumed price fixing overcharge and class period to conform with facts alleged elsewhere in the petition would yield an amount in controversy in excess of the jurisdictional minimum. For instance, by relying on the Cadbury and Wall Street Journal information and using a 5.1% rather than a 5% price fixing overcharge the amount in controversy would be $5.04 million. Similarly, assuming a fixed amount of damages per month and relying on the 73 month definition of the class period to perform the compensatory damages calculation, rather than the 72 month period utilized by Bell in the computation, yields an amount in controversy in excess of $5.04 million. Relying on CAFA's relaxed diversity

---

[3]Within the petition Bell excerpted a December 22, 2007 Wall Street Journal article which reported that an unnamed chocolate manufacturer "announced [to Canadian regulatory authorities] an average price increase of 5.2% for its chocolates effective Oct. 31, 2005." Bell also alleged that "[d]efendant Cadbury announced in 2007 that it would increase the price of chocolate bars more than the previous projected price increase of four to six percent and more than the rate of inflation."

[4]The petition defines the class period variously as extending from "at least February 2002 through the time of class certification" and "at least February 2002 to the present," i.e., the February 28, 2008 date of filing.

jurisdiction requirements, the manufacturers filed a notice of removal to federal district court.

Bell moved to remand to state court, and the district court granted the motion. Although noting the Iowa prohibition on pleading damages with specificity, the district court concluded that its "task is not to determine compliance with state rules of procedure. Rather, its job is to determine whether CAFA's amount in controversy has been met." The district court applied a legal certainty test in deciding the motion, and after it found that the manufacturers had failed to prove to a legal certainty that the amount in controversy exceeded the jurisdictional minimum, it remanded the case for lack of subject matter jurisdiction. This interlocutory appeal followed.

We review de novo a district court's order to remand a removed case for lack of subject matter jurisdiction. In re Minn. Mut. Life Ins. Co. Sales Practices Litig., 346 F.3d 830, 834 (8th Cir. 2003).

The proponent of diversity jurisdiction has the burden of proving that the amount in controversy exceeds the jurisdictional minimum. Advance Am. Servicing of Ark., Inc. v. McGinnis, 526 F.3d 1170, 1173 (8th Cir. 2008). This is a straightforward task in the usual matter because the plaintiff is the master of the complaint. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 290 (1938). Thus, where the plaintiff is the proponent of diversity jurisdiction, the amount in controversy controls unless the defendant can establish to a legal certainty that the claim is for less than the jurisdictional minimum. Id.

Where the defendant seeks to invoke federal jurisdiction through removal, however, it bears the burden of proving that the jurisdictional threshold is satisfied. Minn. Mut., 346 F.3d at 834. This can be a complex task where, as here, the plaintiff prefers to litigate in state court. See Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 449 (7th Cir. 2005) ("The complication is that a removing defendant can't make

the plaintiff's claim for him . . . ."). The party seeking to remove in the non CAFA context in our circuit "has the burden to prove the requisite amount by a preponderance of the evidence." Advance Am., 526 F.3d at 1173; See also James Neff Kramper Family Farm P'ship v. IBP, Inc., 393 F.3d 828, 831 (8th Cir. 2005); Minn. Mut., 346 F.3d at 834; Kopp v. Kopp, 280 F.3d 883, 885 (8th Cir. 2002). This standard applies regardless of whether "the complaint alleges no specific amount of damages or an amount under the jurisdictional minimum." Minn. Mut., 346 F.3d at 834. Once the removing party has established by a preponderance of the evidence that the jurisdictional minimum is satisfied, remand is only appropriate if the plaintiff can establish to a legal certainty that the claim is for less than the requisite amount. Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d 536, 543 (7th Cir. 2006).

The enactment of CAFA did not alter the proposition that the plaintiff is the master of the complaint. See Brill, 427 F.3d at 449. Nor did it impact the traditional rule that the party attempting to remove bears the burden of establishing subject matter jurisdiction. Blockbuster, Inc. v. Galeno, 472 F.3d 53, 58 (2d Cir. 2006). The precise burden that applies to a removing defendant in the CAFA context has not been defined in this circuit.

Despite the Iowa prohibition on pleading damages with specificity, Bell urges us to conclude that where a complaint specifies an amount in controversy below the jurisdictional minimum, the party seeking to remove under CAFA must establish to a legal certainty that the amount claimed exceeds the jurisdictional threshold.[5] For support, Bell relies on several other circuit decisions announcing such an elevated removal burden. See, e.g., Lowdermilk v. U.S. Bank Nat'l Ass'n, 479 F.3d 994, 1000 (9th Cir. 2007) (where plaintiff pleads damages under jurisdictional minimum, party removing under CAFA must prove jurisdictional facts to legal certainty); Morgan v.

_____

[5]Bell conceded at argument than when a complaint is silent with regard to the amount of damages sought, the party seeking to remove need only establish that the jurisdictional minimum is satisfied by a preponderance of the evidence.

Gay, 471 F.3d 469, 474 (3d Cir. 2006) (where plaintiff permitted by state law pleads damages under jurisdictional minimum, party removing under CAFA must prove jurisdictional facts to legal certainty).

In Guglielmino v. McKee Foods Corp., 506 F.3d 696, 699 (9th Cir. 2007), a case that arose in the non CAFA context, the Ninth Circuit identified "three different burdens of proof which might be placed on a removing defendant under varying circumstances." First, when a state court complaint alleges an amount in controversy greater than the jurisdictional minimum, the jurisdictional threshold is satisfied unless it appears to a legal certainty that the plaintiff cannot recover the amount pled. Id. Second, when the complaint does not specify an amount in controversy or it is "unclear or ambiguous" from the face of the complaint whether the jurisdictional threshold is met, the removing defendant must establish the jurisdictional facts by a preponderance of the evidence. Id. Finally, when a complaint alleges an amount in controversy below the jurisdictional threshold, the party seeking removal may be required to prove to a legal certainty that the jurisdictional amount is satisfied. Id.

Although disclaiming an intent to do so, by urging our adoption of the framework identified by the Ninth Circuit Bell is in effect asking this court to utilize a different removal standard in CAFA cases than in others. Requiring the manufacturers to establish jurisdictional facts by a legal certainty would force us to depart from our non CAFA precedent where we have only required a removing party to establish jurisdictional facts by a preponderance of the evidence. See, e.g., Advance Am., 526 F.3d at 1173; James Neff, 393 F.3d at 831; Minn. Mut., 346 F.3d at 834; Kopp, 280 F.3d at 885. There would appear to be no logical reason why we should demand more from a CAFA defendant.

A primary purpose in enacting CAFA was to open the federal courts to corporate defendants out of concern that the national economy risked damage from a proliferation of meritless class action suits. See CAFA, Pub. L. No. 109-2, §

2(a)(2)(B), 119 Stat. 4, 5 (codified as a note to 28 U.S.C. § 1711) ("[T]here have been abuses of the class action device that have adversely affected interstate commerce."); Id. at § 2(a)(4)(A) ("Abuses in class actions undermine . . . the free flow of interstate commerce . . . in that State and local courts are keeping cases of national importance out of Federal court."); See also Lowery v. Ala. Power Co., 483 F.3d 1184, 1197 (11th Cir. 2007) ("Congress expressly intended CAFA to expand federal diversity jurisdiction over class actions."), cert. denied, 128 S. Ct. 2877 (2008). Demanding that a removing CAFA defendant establish the amount in controversy by a legal certainty "inverts the 'legal certainty' test of St. Paul Mercury, by placing such burden on the party seeking to assert rather than defeat federal jurisdiction [and] places too high a barrier in the path of defendants . . . ." Guglielmino, 506 F.3d at 702 (O'Scannlain, J., specially concurring) (internal citation omitted) (emphasis in the original).

To require a different quantum of proof depending on whether or not the complaint pleads damages with specificity may have unintended consequences. Different states have varying pleading requirements. Iowa, for example, does not permit any mention of specific damages. See Iowa R. Civ. P. § 1.403(1). Arkansas on the other hand lacks such a prohibition. See Ark. R. Civ. P. § 8(a). Were we to adopt the removal framework proposed by Bell, defendants within the same circuit would be subject to varying burdens of proof upon removal based solely on differing state pleading requirements. See Carlsberg Res. Corp. v. Cambria Sav. and Loan Ass'n, 554 F.2d 1254, 1261 (3d Cir. 1977) (declining to adopt rule which "would make diversity jurisdiction . . . largely dependent upon the vagaries of state law."). "[T]he prospect of disparate treatment of litigants whose ability to vindicate their interests in federal court, under the diversity provisions, would be equally dependent upon state law" would also be troubling. Id. Thus, a party seeking to remove under CAFA must establish the amount in controversy by a preponderance of the evidence regardless of whether the complaint alleges an amount below the jurisdictional minimum.

Since we construe Bell's petition as one that does not plead a specific sum, the preponderance burden would apply in any event. Where, as here, state law forbids pleading a specific amount in the complaint, any attempt to do so is a legal nullity. See Guglielmino, 506 F.3d at 704 (O'Scannlain, J., specially concurring) ("Some states do not allow any mention of damages in state court complaints. . . . [I]n these states, the complaint will always be silent, triggering the less demanding preponderance of the evidence inquiry . . . ."); De Aguilar v. Boeing Co., 47 F.3d 1404, 1410-12 (5th Cir. 1995) (bad faith is established and removal cannot be evaded where plaintiff attempts to avoid federal jurisdiction by pleading damages with specificity in violation of state law). Indeed, those courts that have endorsed the legal certainty standard have applied it only in cases where the plaintiff has complied with applicable state law in pleading a specific amount of damages. See, e.g., Morgan, 471 F.3d at 474 (where plaintiff "permitted by state laws" pleads damages under jurisdictional minimum, removing party must prove jurisdictional facts to legal certainty) (emphasis supplied).

In order to ensure that any attempt to remove would have been unsuccessful, Bell could have included a binding stipulation with his petition stating that he would not seek damages greater than the jurisdictional minimum upon remand; it is too late to do so now. De Aguilar, 47 F.3d at 1412 ("[l]itigants who want to prevent removal must file a binding stipulation or affidavit with their complaints; once a defendant has removed the case, St. Paul makes later filings irrelevant.") (quoting In re Shell Oil Co., 970 F.2d 355, 356 (7th Cir. 1992) (per curiam)).

At argument Bell suggested that the ad damnum clause contained within the petition in violation of Iowa law was equivalent to a binding stipulation. Precedent is to the contrary, however. See, e.g., Oshana v. Coca-Cola Co., 472 F.3d 506, 511 (7th Cir. 2006) ("Such disclaimers have been long approved as a way of staying out of federal court but only when the disclaimer is binding.") (internal citation omitted) (emphasis supplied); Guglielmino, 506 F.3d at 705 n.6 (O'Scannlain, J., specially

concurring) ("In the days of the St. Paul Mercury decision, plaintiffs could sue for less by stating an amount claimed. In most jurisdictions, however, the common law rule no longer prevails and the ad damnum clause does not set forth an upper limit on recovery.") (internal citation omitted). Thus, even if pleading with specificity were still permitted in Iowa, we doubt that an ad damnum clause would prevent Bell from recovering in excess of the amount claimed. The doctrine of judicial estoppel is similarly unavailing since we find no evidence that upon remand an Iowa court would prohibit recovery in excess of the amount alleged as a matter of law. Cf. Winnebago Indus., Inc. v. Haverly, 727 N.W.2d 567, 574-75 (Iowa 2006) (doctrine of judicial estoppel in Iowa "prevents a party who has successfully taken a position in one litigation from taking the opposite position in a subsequent litigation . . . .") (emphasis supplied).

The manufacturers argue that a remand is unnecessary because it is apparent from the face of the petition that the amount in controversy exceeds the jurisdictional minimum. They ask this court simply to apply the preponderance standard to the jurisdictional facts, and they point out the district court footnote that "[f]or purposes of this case, it does not matter whether the court uses the reasonable probability or legal certainty standard; the outcome is the same under either standard."[6]

Whether or not the district court was correct in stating that the outcome would be the same under either standard, it did not provide any analysis to support its assertion. Indeed, the court neglected to discuss the preponderance of the evidence burden or its application and instead examined the jurisdictional facts exclusively

_____

[6]The district court misidentified the alternate burden as a reasonable probability. Although that standard does find some support within the Seventh Circuit, see Brill, 427 F.3d at 449, in this and most other circuits the counterpart to a legal certainty is a preponderance of the evidence. See, e.g., McPhail v. Deere & Co., 529 F.3d 947, 955 (10th Cir. 2008); Guglielmino, 506 F.3d at 699; Smith v. Nationwide Prop. and Cas. Ins. Co., 505 F.3d 401, 404 (6th Cir. 2007); Minn. Mut., 346 F.3d at 834.

under a legal certainty lens.  The fact that the manufacturers might not be able to satisfy the demanding legal certainty standard does not indicate that they could not satisfy the more lenient preponderance of the evidence standard.  Under the preponderance standard, "[t]he jurisdictional fact . . . is not whether the damages are greater than the requisite amount, but whether a fact finder might legally conclude that they are . . . ."  Kopp, 280 F.3d at 885 (emphasis supplied).  The inquiry described is fact intensive.  Since a district court is better equipped to examine jurisdictional facts in the first instance, we decline the manufacturers' request to apply the preponderance standard at this juncture.

Accordingly, we vacate the decision below and remand to the district court with instructions to apply the preponderance of the evidence standard to the jurisdictional facts.  If the manufacturers prove by a preponderance of the evidence that the amount in controversy is satisfied, remand is only appropriate if Bell can establish that it is legally impossible to recover in excess of the jurisdictional minimum.  See Spivey v. Vertrue, Inc., 528 F.3d 982, 986 (7th Cir. 2008) (citing St. Paul Mercury, 303 U.S. at 288-89).

———————————————